UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Hoff Stauffer, Administrator of the Estate of Carlton Stauffer,<br><br>      Plaintiff,<br><br>v.<br><br>Internal Revenue Service,<br><br>      Defendant. | No. 15-CV-10271-MLW |

**REPORT AND RECOMMENDATION ON DEFENDANT UNITED STATES' MOTION TO DISMISS
(DKT. NO. 19)**

CABELL, U.S.M.J.:

This matter comes before the Court on the United States' Motion to Dismiss.[1] (Dkt. No. 19). Hoff Stauffer ("the plaintiff" or Stauffer) is the administrator of the estate of his late father, Carlton Stauffer. In 2013, Stauffer filed several years' worth of estate tax returns with the United States Internal Revenue Service (the IRS or "the defendant"), and requested for the 2006 tax year a refund for an overpayment of more than $100,000. The IRS denied the claim as untimely under the statute. The plaintiff concedes that he filed the refund claim late but argues that the limitations

---

[1] Though the complaint names the Internal Revenue Service, the proper defendant in civil actions for federal tax refunds is the United States. *See* 28 U.S.C. § 1346(a)(1).

period was tolled because his father was financially disabled during the relevant period. The defendant argues that the failure to comply with the statute's timing requirements divests the Court of subject matter jurisdiction. For the reasons discussed below, I recommend that the defendant's motion to dismiss be denied.

## I. RELEVANT FACTS

The relevant facts framing the lawsuit are apparently not in dispute. Carlton Stauffer passed away in October 2012 at the age of 90 and the plaintiff became the administrator of the estate. (Compl. ¶¶ 5-6). In the course of fulfilling that role the plaintiff discovered that his father had neglected to file tax returns for the tax years 2006 through 2012. (Compl. ¶ 6). Seeking to rectify the delinquency, the plaintiff filed the outstanding returns on or about April 26, 2013. (Compl. ¶ 7). Relevant here, the estate claimed that it overpaid taxes for the 2006 tax year by $137,403, and the plaintiff accordingly requested a refund for that amount. (Compl. ¶ 7).

On or about February 18, 2014, the IRS denied the request for refund as untimely under 26 U.S.C. § 6511. (Compl. ¶ 8). The plaintiff pursued the claim via the IRS's internal appeals process. (Compl. ¶ 8). The IRS will excuse a late filing if the taxpayer was "financially disabled." 26 U.S.C. § 6511(h). In that regard, the plaintiff submitted a written explanation from a licensed psychologist who had previously treated Carlton Stauffer from 2001

until his death in 2012.  (Compl. ¶ 9).  The psychologist's explanation detailed a variety of mental and physical conditions which, he opined, had prevented Carlton Stauffer from managing his financial affairs from at least 2006 until his death.  (*Id.*).

By letter dated December 2, 2014, the IRS preliminarily rejected the plaintiff's claim.  (Compl. ¶ 11).  The IRS stated that while it will accept an explanation from a "physician," a psychologist is not a physician under the definition contained in Revenue Procedure 99-21.  (Compl. ¶¶ 11-12).  On January 7, 2015, the IRS formally denied the plaintiff's claim for a refund. (Compl. ¶ 14).

II.  **PROCEDURAL HISTORY**

The plaintiff filed this action on February 5, 2015.  The complaint asserts jurisdiction pursuant to 26 U.S.C. § 7422, 28 U.S.C. §§ 1402, 1349, 1346 and 1331, and seeks a judgment for the amount of the overpayment for the year 2006, plus interest, litigation costs and attorney's fees.  On May 3, 2016, the defendant moved to dismiss for lack of jurisdiction.  On May 17, 2016, the plaintiff opposed the motion.

III. **LEGAL STANDARD**

The defendant argues that the court lacks jurisdiction because the plaintiff's claim for refund was untimely under the pertinent statute.  A plaintiff bears the burden of proving that the court has jurisdiction.  *O'Toole v. Arlington Trust Co.*, 681

3

F.2d 94, 98 (1st Cir. 1982). Generally, a court should apply a standard of review "similar to that accorded a dismissal for failure to state a claim" under Rule 12(b)(6). *Menge v. N. Am. Specialty Ins. Co.,* 905 F.Supp.2d 414, 416 (D.R.I. 2012) (quoting *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995). A court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004) (quoting *Hishon v. King & Spalding,* 476 U.S. 69, 73 (1984)). To show that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharmaceuticals, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011)). In deciding Rule 12(b)(1) motions, however, the court may consider materials outside the pleadings, and factual disputes may be resolved. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

**IV.    LEGAL FRAMEWORK FOR TAX REFUND CLAIMS**

A taxpayer seeking a refund of taxes erroneously or unlawfully collected may bring a federal court action against the United States.  28 U.S.C. § 1346(a)(1).  The Internal Revenue Code specifies that before doing so, though, the taxpayer must comply with the tax refund scheme established in the Code. *United States v. Dalm,* 494 U.S. 596, 609-610 (1990).  That scheme provides that a claim for a refund must be filed with the IRS before suit can be brought, and establishes strict timeframes for filing such a claim. *United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 4 (2008).

In particular, civil claims for tax refunds are governed by 26 U.S.C. § 7422.  Pursuant to that statute, "[n]o suit or proceeding shall be maintained… until a claim for refund or credit has been duly filed with the Secretary."  26 U.S.C. § 7422.  To be duly filed under section 7422, a claim for refund must in turn be timely under 26 U.S.C. § 6511.  *Dickow v. United States*, 654 F.3d 144, 149 (1st Cir. 2011).  To be timely under section 6511, a claim for refund "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."  26 U.S.C. § 6511(a).  Applied here, both parties agree that a claim for refund for the tax year 2006 would have properly been filed within three years of the original April 15, 2007 filing

deadline, or April 15, 2010, but Carlton Stauffer had received an automatic six-month extension, so the deadline would have been October 15, 2010. The plaintiff did not submit his claim for refund until April 26, 2013, well beyond the deadline and limitations period.

However, section 6511(h) provides that the time limit for submitting a claim "shall be suspended during any period of such individual's life that such individual is financially disabled." 26 U.S.C. § 6511(h)(1). An individual is "financially disabled" if he is "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment" expected to result in death or last at least 12 months. 26 U.S.C. § 6511(h)(2)(A). One claiming a financial disability must provide proof of its existence "in such form and manner as the Secretary may require." *Id.*

Revenue Procedure 99-21 "sets forth in detail the 'form and manner' in which proof of financial disability must be provided." *Bova v. United States*, 80 Fed. Cl. 449, 455 (Fed. Cl. 2008). Among other things, and relevant here, Revenue Procedure 99-21 provides that one claiming a financial disability must submit "a written statement by a physician *(as defined in § 1861(r)(1) of the Social Security Act, 42 U.S.C. § 1395x(r))*, qualified to make the determination…" R.P. 99-21, § 4(1) (emphasis added). As such, Revenue Procedure 99-21 does not itself define the term

6

"physician," but instead borrows a definition of the term as used by the Social Security Administration (SSA).

As an initial matter, it is not patently obvious what the IRS deems the definition of "physician" to be in this context. The revenue procedure refers to section "1861(r)(1)" but that is confusing because section 1861(r) does not formally contain any subsections. Rather, section 1861(r) sets out in one large paragraph a definition for the term "physician" that includes five enumerated categories of professionals, including: (1) "a doctor of medicine or osteopathy," (2) "a doctor of dental surgery or of dental medicine," (3) a doctor of podiatric medicine," (4) "a doctor of optometry," and (5) "a chiropractor." *See* § 1861(r). Assuming as a matter of common sense that the IRS's reference to a subsection one is meant to refer to the first enumerated category, some confusion still remains because the revenue procedure directly links section "1861(r)(1)" to "42 U.S.C. § 1395x(r)" --a statute that essentially tracks verbatim the wording and format of section 1861(r), but does not contain a corresponding reference to a subsection one. Indeed, section 1395x(r), like section 1861(r), does not formally contain any subsections. So, is the reference to a subsection one in section 1861(r)(1) a scrivener's error, or is it meant to purposely narrow the scope of the meaning of a physician to a doctor of medicine or osteopathy? If it is the latter, why does not the reference to section 1395x(r)

7

also refer to a subsection one?  The ambiguity is not lessened when one considers that Revenue Procedure 99-21 was drafted principally by one IRS employee and does not contain any accompanying rationale explaining the choice of the definition of the word "physician."[2]  It is not necessary for the Court to resolve this question here, though, because both parties agree that, whatever definition of "physician" controls, it does not facially include a psychologist.

V. **ANALYSIS**

A revenue procedure is a "statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge."  26 C.F.R. § 601.601(d)(2)(i)(b).  The stated purpose of Revenue Procedure 99-21 is to "describe[] the information that is required under § 6511(h)(2)(A) of the Internal Revenue Code in order to request suspension of the period of limitations under § 6511 for claiming a credit or refund of tax due to an individual taxpayer's financial disability."  *See* R.P. 99-21, § 1.

---

[2] At the end of RP 99-21, and under the heading "DRAFTING INFORMATION," one is informed that "[t]he principal author of this revenue procedure is Paul E. Tellier of the Office of Assistant Chief Counsel (Income Tax and Accounting)."

8

"An agency's interpretation of a statute that it administers may warrant judicial deference, depending on the degree to which the agency's exposition of the issue is deemed authoritative." *Merrimon v. Unum Life Ins. Co. of America*, 758 F.3d 46, 54 (1st Cir. 2014). Agencies speak in a variety of ways, and therefore authoritativeness often depends on context. *Id.* On the one hand, when an agency speaks with the force of law, the agency's interpretation is due judicial deference, known as *Chevron* deference, as long as its interpretation is reasonable. *Id.* See also *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). But when an agency speaks with something less than the force of law its interpretations are not entitled to *Chevron* deference. See *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."). Such interpretations are entitled to deference "only to the extent that those interpretations have the 'power to persuade.'" *Merrimon*, 758 F.3d at 55 (quoting *Christensen*, 529 U.S. at 587). Under this lower standard of review, known as the *Skidmore* standard, courts look to a variety of factors, including the thoroughness of the agency's consideration, the validity of its reasoning, and the consistency of its interpretation with earlier and later

9

pronouncements.  *Doe v. Leavitt*, 552 F.3d 75, 81 (1st Cir. 2009). *See also Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

With respect to IRS revenue procedures, courts generally have tended to treat them as non-binding and not entitled to *Chevron* deference.  *See Exxon Mobil Corp. & Affiliated Cos. v. C.I.R.*, 689 F.3d 191, 200-201 (2d Cir. 2012) (revenue procedure not entitled to *Chevron* or *Skidmore* deference); *Tualatin Valley Builders Supply, Inc. v. United States,* 522 F.3d 937 (9th Cir. 2008) (without deciding the issue, applying *Skidmore* rather than *Chevron* standard); *Federal Nat. Mortg. Ass'n v. United States*, 379 F.3d 1303, 1307-08 (Fed. Cir. 2004) (revenue procedure not entitled to *Chevron* deference); *Battle Flat, LLC v. United States*, 2015 WL 5554807, at *3 (D.S.D. Sept. 21, 2015) (assuming revenue procedures not entitled to *Chevron* deference); *In re Peterson*, 321 B.R. 259, 261 (D. Neb. 2004) (revenue procedure not entitled to *Chevron* deference).  Some courts have suggested IRS revenue procedures may not even be entitled to *Skidmore* deference.  *See Corbalis v. C.I.R.*, 142 T.C. 46, 54 (Tax Ct. 2014) (revenue procedure not entitled to deference); *Exxon Mobil Corp. & Affiliated Cos. v. C.I.R.*, 689 F.3d 191, 200 (2d Cir. 2012) (revenue procedure "entitled to little, if any, deference"); *Marandola v. United States*, 76 Fed. Cl. 237, 246 n.14 (Fed. Cl. 2007) (revenue procedures "can, where they set out a persuasive rationale, be entitled to limited *Skidmore* deference").  The First Circuit has

apparently not yet had occasion to address the issue directly but it has held in an analogous case that an agency's interpretative guidance is not entitled to *Chevron* deference where the agency simply co-opts an existing definition designed by a different agency for use in connection with a different statute. *See Navarro v. Pfizer Corp.,* 261 F.3d 90 (1st Cir. 2001) (holding in an FMLA lawsuit that EEOC interpretative guidance issued pursuant to the ADA was not entitled to *Chevron* deference when applied in FMLA context, particularly where EEOC never had any authority to promulgate regulations pursuant to the FMLA). And perhaps not surprisingly, the Department of Justice has publicly announced that it no longer advocates for *Chevron* deference for revenue procedures.[3] Against this backdrop, I conclude similarly that Revenue Procedure 99-21 is not binding and is not entitled to *Chevron* deference.

That does not end the inquiry, however. The precedent cited above suggests that even if not accorded *Chevron* deference, a revenue procedure may warrant deference if it survives scrutiny under the *Skidmore* standard. *See e.g., Navarro,* 261 F.3d at 99

---

[3] Marie Sapirie, *DOJ Won't Argue for Chevron Deference for Revenue Rulings and Procedures, Official Says*, taxanalysts (May 12, 2011), http://www.taxhistory.org/www/features.nsf/Articles/2EC3B72AF2B851808525788E0 056818B?OpenDocument (Last visited: Jan. 30, 2017) ("The Department of Justice will no longer argue for *Chevron* deference for revenue rulings and revenue procedures, said Gilbert Rothenberg, appellate section chief in the DOJ's Tax Division.").

11

(choosing to apply *Skidmore* standard to agency's regulation where *Chevron* deference not warranted).  As noted, under the *Skidmore* standard an agency's interpretation of its regulations will be entitled to deference only to the extent those interpretations have the power to persuade, a determination which turns on a number of factors such as the "thoroughness evident in the guidance's consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Navarro,* 261 F.3d at 99 (citing *Skidmore,* 323 U.S. at 140) (internal alteration marks omitted); *Doe v. Leavitt*, 552 F.3d 75, 81 (1st Cir. 2009).  This is where the IRS's reliance on Revenue Procedure 99-21 falls short.

   The purpose of Revenue Procedure 99-21 is to provide guidance for taxpayers who need to show a disability under section 6511 to excuse their late filing.  To that extent, Revenue Procedure 99-21 at its most basic level requires the taxpayer to bring a doctor's note, an entirely reasonable proposition.  However, section 6511(h) allows a disability to be based on a showing of a "mental impairment" and Revenue Procedure 99-21 directly undermines that goal where it demands a note from a physician but then defines that term to exclude a whole class of professionals generally considered competent to opine on the existence of a mental impairment.  On the record before the Court, there is no evidence that the IRS has considered the implications of its

interpretation of the word "physician" as used in the revenue procedure. On the contrary, and as noted, Revenue Procedure 99-21 was drafted principally by a single IRS employee who without elaboration or explanation selected a definition of "physician" as used by the SSA. In the absence of additional information, there is just no basis to assess the soundness of the IRS's interpretation of the word "physician" in Revenue Procedure 99-21.

Moreover, if the IRS's goal was to look to the SSA for instructive guidance on who may be competent to opine on a disability based on a physical or mental impairment, then its interpretation of the word "physician" in Revenue Procedure 99-21 directly contravenes that purpose, because the SSA *does* permit psychologists to opine on whether an individual is disabled as a result of a mental impairment. *See* 20 CFR § 404.1527(a)(2) ("[m]edical opinions are statements from physicians *and psychologists* or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)….") (emphasis added). *See also Weiler v. Shalala*, 922 F.Supp. 689, 696 n.10 (D. Mass. 1996) ("The opinion of a treating psychologist is considered an acceptable medical source under the treating-physician rule."). Indeed, the SSA and IRS both use definitions of "disability" that are in relevant part virtually identical. *Compare* 42 U.S.C. § 423(d)(1)(A) ("The term "disability" means the

13

inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.*") with 26 U.S.C. § 6511(h)(2)(A) ("an individual is financially disabled if such individual is unable to manage his financial affairs *by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.*") (emphasis added). So, to the extent the goal underlying Revenue Procedure 99-21 was to implement a disability-determination process based on principles consistent with those of the SSA, the interpretation of "physician" urged by the government here undermines that purpose where the SSA treats psychologists as physicians and welcomes their medical opinions in disability determination matters.

To be clear, this is not to suggest that the IRS should have also incorporated the SSA's regulation endorsing the acceptance of medical opinions from psychologists, or defined "physician" more broadly to encompass and reflect the SSA's practice. Rather, the point is that where the IRS has taken its definition of "physician" from an agency that demonstrably does not interpret it in practice to exclude psychologists from opining on a patient's impairment, the failure of the IRS to provide any insight explaining the

14

deliberative process it went through in implementing Revenue Procedure 99-21 gives rise to the concern that the IRS did not thoroughly consider the implications of interpreting the word "physician" as it did, or how applying that definition might thwart a taxpayer's ability to show a legitimate mental impairment-based disability, or how, if the IRS did consider such things, why the policy should nonetheless be enforced.

Perhaps the IRS is in possession of such information. On the present record, though, I am not persuaded that the Court should defer to the defendant's view that a psychologist's statement describing a mental impairment cannot constitute a physician's statement within the meaning of Revenue Procedure 99-21.

None of the authority cited by the defendant compels a different result. In *Abston v. Commissioner*, 691 F.3d 992 (8th Cir. 2012), the court found that the plaintiff failed to satisfy the requirements of Revenue Procedure 99-21 because she failed to submit a physician's statement at all; the court never considered the issue of whether a statement from a psychologist might also suffice. *Abston*, 691 F.3d at 996 ("Because Abston failed to submit a physician's statement altogether, we agree with the district court that she did not provide the IRS with probative evidence of financial disability."). Similarly, all of the cases cited by the *Abston* court and relied on by the defendant either explicitly involve *physical* impairments –the sort of impairment one might not

15

consider a psychologist competent to comment on, or make no mention of the type of impairment, but none discusses the appropriateness of relying on a psychologist's statement to satisfy Revenue Procedure 99-21 or section 6511(h). The defendant does cite to one case where the Tax Court observed that a psychologist is not a physician under Revenue Procedure 99-21. *See Green v. Commissioner,* 97 T.C.M (CCH) 1542 (2009). In that case, however, the IRS itself appears to have accepted and considered the psychologist's letter opining that the taxpayer suffered from a mental impairment, and instead argued only that the facts demonstrated that the taxpayer was actually able to handle her financial affairs and thus was not disabled. *Id.* Regardless, the Tax Court has also noted that revenue procedures are not entitled to deference where, as here, "[t]here is no reasoning in support of the conclusion stated in the revenue procedure." *Corbalis*, 142 T.C. at 54.

In sum, I conclude that the defendant's interpretation of the term "physician" in Revenue Procedure 99-21 is not entitled to deference here. I conclude further that to the extent the psychologist's statement the plaintiff submitted supports a financial disability based on a mental impairment, the IRS was not required to reject it on the ground that it did not constitute a "physician's" statement. Consequently, I find no basis on this record to deem the plaintiff's claim for refund untimely under

16

section 6511(h), and thus do not agree that the Court lacks jurisdiction to hear the plaintiff's suit.[4]

## VI. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the defendant's Motion to Dismiss be DENIED. The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The

---

[4] The defendant raises two additional points that merit brief attention. First, the defendant argues that even assuming a psychologist's statement is acceptable, the plaintiff's claim still fails because the plaintiff did not submit the statement at the same time he submitted the claim for refund, but instead submitted it with the estate's initial appeal. I reject this argument, as have other courts. Where refund claims may technically be deficient by virtue of missing some piece of information, the practice is to accept the missing information at a later stage so it and the taxpayer's claim may be considered. *See Abston,* 691 F.3d at 995 (where claim for refund was denied as untimely for failure to submit certain information, plaintiff permitted on appeal to IRS to submit the missing information); *see also Walter v. United States*, 2009 WL 5062391, at *10 (W.D.P.A. Dec. 16, 2009) ("No case has ever held that a treating physician's statement that contains a technical deficiency that is easily corrected is insufficient under 6511(h). On the contrary, there is a doctrine of allowing informal refund claims that are 'deficient merely in one or two of the technical requirements imposed by the Treasury regulation.'") (quoting *Commissioner v. Ewing*, 439 F.3d 1015 (9th Cir. 2006)). Finally, the defendant argues in a closing footnote, and without citation to any authority, that it is "questionable" whether the psychologist was qualified to opine that Carlton Stauffer was disabled where the psychologist appears to have based his determination in part on the taxpayer's physical ailments, matters outside a psychologist's area of expertise. The sufficiency of the psychologist's statement is not before the Court so there is no need to address this claim. But, even assuming the psychologist may not have been qualified to assess the significance of Mr. Stauffer's physical impairments, it does not mean that his mental impairments were not sufficient on their own to support a determination of financial disability.

17

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: February 14, 2017