UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HOFF STAUFFER, ADMINISTRATOR    )
OF THE ESTATE OF CARLTON        )
STAUFFER,                       )
    Plaintiff,                  )
                                )    C.A. No. 15-10271-MLW
       v.                     )
                                )
INTERNAL REVENUE SERVICE,       )
    Defendant.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 29, 2017

I.   INTRODUCTION

On April 26, 2013, Hoff Stauffer, as administrator of the estate of his late father, Carlton Stauffer, (the "Estate") sought a refund for overpaid taxes for the year ending on December 31, 2006. The claim was submitted past the October 15, 2010 deadline applicable under 26 U.S.C. §6511. The Estate, however, submitted a statement by Stauffer's treating psychologist alleging that Stauffer had suffered from a "financial disability" that justified suspension of the limitations period under 26 U.S.C. §6511(h)(2). The IRS nevertheless denied the claim as untimely because the psychologist's letter did not satisfy the requirement of Revenue Procedure 99-21 that a person claiming financial disability submit a statement from a "physician," which is defined as a "doctor of medicine or osteopathy" and excludes psychologists.

The Estate sued. The IRS moved to dismiss, arguing that this court lacks jurisdiction because the Estate did not properly file its refund claim during the limitations period. On February 24, 2017, the Magistrate Judge issued a report recommending that the motion be denied because the IRS did not justify its decision not to consider the statement from Stauffer's psychologist as proof of his disability. For the reasons explained below, the court is adopting in part and modifying in part the Report and Recommendation, and the motion to dismiss is being denied.

## II. APPLICABLE LEGAL STANDARDS

### A. Review of a Magistrate's Disposition

Rule 72(b)(3) of the Federal Rules of Civil Procedure requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." "Conclusory objections that do not direct the reviewing court to the issues in controversy" are not proper under Rule 72(b). Velez-Padro v. Thermo King De Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006). Moreover, "[a party is] not entitled to a de novo review of an argument never raised" before the magistrate judge. Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987). "Parties must take before the magistrate, 'not only their best shot but all of their shots.'" Id. (quoting Singh v. Superintending Sch. Comm. of City of Portland, 593 F. Supp. 1315, 1318 (D. Me. 1984).

Waiver of de novo review by failing to file proper objections does not entitle a party to "some lesser standard" of review. Thomas v. Arn, 474 U.S. 140, 149-50 (1985); see also Costa v. Hall, 2010 WL 5018159, at *17 (D. Mass. Dec.2, 2010) ("Absent objections, the court may adopt the report and recommendation of the magistrate judge."). However, review by the court in such circumstances is not prohibited, and some level of oversight, even if not de novo, is encouraged. See Henderson v. Carlson, 812 F.2d 874, 878 (3rd Cir. 1987).

B. Motion to Dismiss for Lack of Jurisdiction

"There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." Torres-Negron v. J & N Records, LLC, 504 F. 3d 151, 162 (1st Cir. 2007). "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion." Id. However, when as in the case, the jurisdictional issue depends on questions of fact, the court conducts one of two inquiries. "[W]here...the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." Id. at 163. In contrast, when as in this case, "the

3

facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim...the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

C. Sovereign Immunity

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued...and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Dalm, 494 U.S. 596, 608 (1990). 28 U.S.C. §1346(a) authorizes individuals to sue for a refund of taxes "erroneously or illegally assessed or collected...under the internal revenue laws." However, the Internal Revenue Code establishes the terms of the consent given in §1346. Before suing, "the taxpayer must comply with the tax refund scheme established in the Code," which provides that "a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim." United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 4 (2008).

In particular, 26 U.S.C. §7422(a) specifies that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected...until a claim for refund or credit has been duly filed with the [IRS], according to the provisions of law in that regard, and the regulations of the Secretary [of the Treasury] established in pursuance thereof.

4

In C.I.R. v. Lundy, the court explained the time limits for filing a claim for a refund with the IRS:

> [26 U.S.C. §6511] contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." §6511(b)(1) (incorporating by reference §6511(a)).

516 U.S. 235, 239-40 (1996). As explained below, the Estate filed its tax return for the year 2006 and its claim for a refund on April 26, 2013. Therefore, the refund claim was timely under section 6511(b)(1).

However, the statute also establishes a "look-back" period. If the taxpayer files the refund claim within 3 years from the time the return was filed, the taxpayer is entitled to a refund only of the taxes he paid within the three years (plus the period of any extension for filing the return) before he filed the claim. See §6511(b)(2)(A).

"Although [courts] should not construe such [] time-bar provision[s] unduly restrictively, [they] must be careful not to interpret [them] in a manner that would extend the waiver [of sovereign immunity] beyond that which Congress intended." Dalm, 494 U.S. at 608. Therefore, the Supreme Court has held that "unless a claim for refund of a tax has been filed within the time limits

5

imposed by §6511(a), a suit for refund...may not be maintained in any court." Clintwood Elkhorn, 553 U.S. at 5. Accordingly, courts may not "toll, for non-statutory equitable reasons, the statutory time...limitations for filing tax refund claims set for in [§6511]." United States v. Brockamp, 519 U.S. 347, 348 (1997). Therefore, absent some form of tolling, a claimant cannot, by filing a claim in 2013, obtain a refund for taxes paid in 2006.

26 U.S.C. §6511(h) provides for statutory tolling of the 3-year limitations period in limited circumstances. In particular, the time limit for submitting a claim to the IRS "shall be suspended during any period of [an individual taxpayer's] life that such individual is financially disabled." 26 U.S.C. §6511(h)(1). An individual is "financially disabled" if he is "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 26 U.S.C. §6511(h)(2)(A). However, "an individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require." Id.

Revenue Procedure 99-21 "sets forth in detail the 'form and manner' in which proof of financial disability must be provided." Bova v. United States, 80 Fed. Cl. 449, 455 (2008). It requires an

individual claiming financial disability to submit "a written statement by a physician (as defined in §1861(r)(1) of the Social Security Act, 42 U.S.C. §1395x(r)), qualified to make the determination" that the individual satisfied the definition of "financially disabled" in 26 U.S.C. §6511(h). Rev. Proc. 22-91, §4 (emphasis added). Revenue Procedure 99-21 does not itself define "physician" for the purposes of its requirements. Instead, it refers to the definition as established in §1861(r)(1) the Social Security Act, 42 U.S.C. §1395x(r).

42 U.S.C. §1395x(r) defines the term "physician" as including five enumerated categories of professionals. The first enumerated category, which corresponds to §1861(r)(1) of the Social Security Act, is "a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such function or action (including ["osteopathic practitioners...within the scope of their practice as defined by state law," 42 U.S.C. §1301(a)(7)])." The parties agree that this definition excludes psychologists.

Therefore, Revenue Procedure 99-21, incorporating 42 U.S.C. §1395x(r), provides that a taxpayer seeking tolling of the 3-year statute of limitations for filing a refund claim based on a "financial disability" must submit a letter from a qualified "doctor of medicine or osteopathy legally authorized to practice medicine and surgery," to prove the taxpayer's disability.

III. RELEVANT FACTS

The court adopts the facts as recited in the Magistrate Judge's Report and Recommendation and supplemented by the record, which are undisputed. See R&R at 2-7.

On October 29, 2012, Carlton Stauffer died at the age of 90. His son, Hoff Stauffer, became the administrator of his estate. While closing the Estate, Hoff Stauffer discovered that his father had not filed tax returns for the tax years 2006 through 2012. Accordingly, on April 26, 2013, Hoff Stauffer filed those returns with the IRS. Stauffer claimed that his father overpaid taxes for the 2006 tax year in the amount of $137,403. He requested a refund for the Estate in that amount.

On February 18, 2014, the IRS denied the claim for a refund as untimely pursuant to 26 U.S.C. §6511. Stauffer filed an internal appeal. In it, he alleged that the IRS was required to toll the statute of limitations, under 26 U.S.C. §6511(h), because his father had been "financially disabled" during the relevant period. In particular, Stauffer submitted an April 9, 2014 certified statement from Carlton's psychologist, Dr. Stanley Schneider, Ed.D., who had treated him from 2001 until his death in 2012. Dr. Schneider wrote that Carlton Stauffer suffered from "psychological problems," in addition to "a variety of chronic ailments, including congestive heart failure, chronic obstructive pulmonary disease, leukemia, and chronic pneumonia." Objection, Ex. 2. These

conditions, he opined, "severely and negatively impacted" Carlton Stauffer's "mental capacity, cognitive functioning, decision making, and emotional well-being," and prevented him from managing his financial affairs from at least 2006 until his death. Id.

Nevertheless, on December 2, 2014, the IRS preliminary denied the Estate's appeal and rejected its claim. The IRS did not determine whether Carlton Stauffer was "financially disabled" during the relevant period. Instead, the agency stated that because Dr. Schneider was not a "physician" as defined in Revenue Procedure 99-21, his letter "cannot be used as a statement that can certify Mr. Stauffer's condition." Compl. at ¶11. On January 7, 2015, the IRS formally denied the Estate's claim for a refund as untimely.

IV. PROCEDURAL BACKGROUND

The Estate alleges that the provision in Revenue Procedure 99-21 applied by the IRS to preclude consideration of a letter from a treating psychologist in determining an individual's financial disability "unreasonably limits [the IRS's] consideration of credible, relevant evidence of financial disability." Compl. at ¶13. It seeks a judgment in the amount of the Estate's overpayment for the year 2006, plus interest, litigation costs, and attorney's fees. The IRS moved to dismiss the complaint. See Docket No. 19. The IRS argued that the suit is barred by sovereign immunity because the Estate failed to file a timely claim for a refund with the agency. The court referred the

case to the Magistrate Judge for pretrial purposes and a Report and Recommendation on the motion.

On February 14, 2017, the Magistrate Judge issued his report and recommended that the motion be denied.

V.    DISCUSSION

As explained earlier, courts do not have jurisdiction over a tax refund suit "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard." Abston v. C.I.R., 691 F.3d 992, 995 (8th Cir. 2012). Section §6511(h)(2)(A) is such a "provision of law." Id. It expressly provides that a taxpayer 'shall not be considered [financially disabled] unless proof of [a disabling impairment] is furnished in such form and manner as the Secretary'" of the Treasury, through the IRS, and not the court, "'may require.'" Abston, 691 F. 3d at 995. By Revenue Procedure 99-21, the IRS "requires" that a refund claim must be submitted in a particular "manner:" with a doctor's note attached. Therefore, to be "duly filed" as required by the terms of the Internal Revenue Code's limited waiver of sovereign immunity, an untimely refund claim must be submitted with a letter from a medical doctor. Id. at 995.

Accordingly, in Abston, the Eighth Circuit held that a district court must dismiss a refund suit in which the taxpayer did not substantially comply with Revenue Procedure 99-21. There, as here, the plaintiff failed to submit a physician's statement,

10

as required by Revenue Procedure 99-21, to the IRS with her request

for a refund. The court reasoned that the court cannot disregard

a lawfully-promulgated revenue procedure to toll the statute of

limitations, because doing so would:

> be the kind of non-statutory tolling the Supreme Court
> barred in Brockamp. The administrative burden of
> responding to late claims, the Court explained, "tells us
> that Congress would likely have wanted to decide
> explicitly whether, or just where and when, to expand the
> statute's limitations periods, rather than delegate to
> the courts a generalized power to do so whenever a court
> concludes that equity so requires."

Id. at 995-96 (citing Brockamp, 519 U.S. at 353). Judicial waiver

of a lawfully promulgated IRS filing requirement would be "contrary

to that principle and therefore beyond the power of the lower

federal courts." Id.

Under the Administrative Procedure Act, 5 U.S.C. §706,

however, a court may set aside an agency action, finding, or

conclusion when it was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." F.C.C. v.

Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)(citing

Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Ins. Co., 463

U.S. 29, 43 (1983)). The Estate argues, in effect, that the IRS's

decision to exclude a psychologist's letter as evidence of

financial disability is arbitrary and capricious and, therefore,

the court should set it aside. Because the government has offered

no evidence that the IRS had a reason that was not arbitrary for

excluding psychologists from the category of professionals qualified to support a claimant's financial disability, the court is denying the motion to dismiss.

The court's analysis, however, differs from the Magistrate Judge's. The Magistrate Judge applied the standard established in Skidmore v. Swift & Co., 323 U.S. 134 (1944), to determine that the IRS's limitation on cognizable experts to medical doctors rather than other "professionals generally considered competent to opine on the existence of a mental impairment" was not entitled to "deference." R&R at 12. Under United States v. Mead Corp., 533 U.S. 218, 229-31 (2001), an agency's interpretation of the statute it is authorized to implement, when the interpretation is contained in an informal guidance document instead of a formal regulation carrying the force of law, warrants judicial deference only to the extent that it has the "power to persuade" according to the factors discussed in Skidmore. See Merrimon v. Unum Life Ins. Co. of America, 758 F. 3d 46, 54-55 (1st Cir. 2014).[1] If the agency's interpretation does not warrant deference, the court applies its own interpretation of the statute. See King v. Burwell, 135 S. Ct. 2480, 2489 (2015).

---

[1] These factors include the "thoroughness evident in the guidance's consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." Id. at 99 (citing Skidmore, 323 U.S. at 140).

The Estate, correctly, does not argue that the revenue procedure misinterprets §6511(h). The statute authorizes the IRS to establish the "form and manner," that is, the procedure, by which refund claimants must submit proof of their disability. A procedural rule is one which "do[es] not [it]self alter the rights or interests of the parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." Nat'l Sec. Counselors v. C.I.A., 931 F. Supp. 2d 77, 106-07 (D.D.C. 2013). A procedural rule generally may not "encode [] a substantive value judgment or put[] a stamp of approval or disapproval on a given type of behavior," but "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one." Id. at 107. "Rules are generally considered procedural so long as they do not 'change the substantive standards by which the [agency] evaluates' applications which seek a benefit that the agency has the power to provide." JEM Broadcasting Co., Inc. v. F.C.C., 22 F. 3d 320, 327 (D.C. Cir. 1994).

The Estate does not argue that Revenue Procedure 99-21 is not a procedural rule. It establishes a rule of evidence--a requirement that the expert certifying the claimant's condition possess a certain qualification. The rule does not change the substantive standard by which the IRS determines whether an individual is financially disabled.

13

Agencies, including the IRS, have especially "broad discretion to decide what procedures to use in fulfilling [their] statutory responsibilities." New Life Evangelistic Center, Inc. v. Sebelius, 753 F. Supp. 2d 103, 121 (D.D.C. 2010). "Absent constitutional constraints or extremely compelling circumstances' courts are _never_ free to impose on [an agency] a procedural requirement not provided for by Congress." Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n, 216 F.3d 1180, 1190 (D.C. Cir. 2000); Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 54 (1978)(stating that a court may not "impose upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good"). This principle has special force here, where Congress has explicitly given the IRS the authority to adopt procedural requirements with which individuals claiming financial disability must comply. The court may not, therefore, require the IRS to accept forms of evidence or manners of proof that the agency, in a valid exercise of its authority, has foreclosed.

However, Vermont Yankee did not exempt from judicial review procedural requirements that the agency does choose to impose. In Allentown Mack Sales and Service, Inc. v. NLRB, for example, the court held that an agency, in conducting an adjudication, must apply the substantive standards, as well as the standards of proof, that it has explicitly adopted. 522 U.S. 359, 378 (1998). In doing

so, the Court stated that "clearly announced rules of law or of evidentiary exclusion [are] subject to judicial review for their reasonableness and their compatibility with [the governing statutes]." Id.[2] The court stated that this includes "a rule of evidence that categorically excludes certain testimony on policy grounds, without reference to its inherent probative value." Id. Revenue Procedure 99-21, which categorically excludes opinion testimony from non-medical doctors, is such a rule. Therefore, the court may review the "reasonableness" of such rules according to

---

[2] The court recognizes that a decision committed by statute to an agency's discretion may be subject to more limited review than the standard established in 5 U.S.C. §706(2)(A). See Webster v. Doe, 486 U.S. 592, 599 (1988)(explaining that 5 U.S.C. §701(a) precludes APA review where Congress "expressed an intent to preclude judicial review" under the APA and "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply"); see also Hinck v. United States, 550 U.S. 501, 503-04 (2007)(recognizing that statutory provision providing that the Secretary of the Treasury "may abate the assessment of all or any part of...[the] interest" on "any [tax] deficiency" attributable to an IRS error committed the abatement decision to the Secretary's unreviewable discretion because the provision "neither indicat[ed] that such authority should be used universally nor provid[ed] any basis for distinguishing between the instances in which abatement should and should not be granted"). The government does not argue, however, that 26 U.S.C. §6511(h) vests the IRS with such unreviewable discretion to establish the "form and manner" of proof of impairment. Because the APA establishes a "presumption of reviewability for all final agency action," U.S. Army Corps of Engineers v. Hawkes Co., Inc., 136 S. Ct. 1807, 1811 (2016), and the implied preclusion of judicial review is "rare," Webster, 486 U.S. at 599, it would be inappropriate for the court to find that §6511(h) precludes judicial review at this stage, absent briefing on the issue.

the deferential "arbitrary and capricious" standard established in 5 U.S.C. §706(2)(A).

In State Farm, the Court explained that the "arbitrary and capricious" standard is "narrow, and a court is not to substitute its judgment for that of the agency." 463 U.S. at 43.

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id. In addition, the agency must have a reasoned explanation for rejecting the "reasonably obvious alternatives" available to it. National Shooting Sports Foundation, Inc. v. Jones, 716 F. 3d 200, 215 (D.C. Cir. 2013). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." State Farm, 463 U.S. at 43. However, it must uphold even a "decision of less than ideal clarity if the agency's path may be reasonably discerned." Fox Television Stations, 556 U.S. at 513-14.

In Abston, the Eighth Circuit reasoned that Revenue Procedure 99-21's requirement that claimants submit a doctors' statement was

16

valid "under any standard of judicial review of executive agency action:"

> Congress defined "financial disability" as meaning that an individual "is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment." Knowing that the IRS would need to fairly and efficiently process a potentially large number of such claims, Congress instructed the Secretary to prescribe the method by which an individual could prove such an impairment. In Revenue Procedure 99-21, the Secretary logically prescribed, "Bring a doctor's note."

Abston, 691 F. 3d at 996 (citing §6511(h)(2)(A)). However, as the Magistrate Judge noted, in Abston, the plaintiff had failed to submit a statement by any doctor at all. Accordingly, the Eighth Circuit did not consider whether the IRS's decision to categorically refuse to consider certain types of doctors' notes--and in particular, statements from treating psychologists--is arbitrary, capricious, or an abuse of discretion under 5 U.S.C. §706(2)(A).

As explained earlier, the agency must explain why it rejected "reasonably obvious" alternatives to the challenged rule. National Shooting Sports Foundation, 716 F. 3d at 215. It is not "obvious" why, in establishing a standard for proving mental disability, the IRS would limit the types of doctors from whom it will accept certifying statements to those defined as "physicians" for the purposes of collecting Medicaid payments under the Social Security Act, 42 U.S.C. §1395x(r), and exclude a psychologist who contemporaneously diagnosed and treated the individual. Section

17

1395x(r) does not restrict the types of professionals who may opine on whether a person has a disability for the purpose of determining whether he is entitled to Disability Insurance Benefits.[3] See 20 C.F.R. 404.1527(a)(2) (effective August 24, 2012 to March 26, 2017)("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)). In fact, in the Social Security context, the opinion of a treating psychologist is entitled to great weight. See Hill v. Astrue, 698 F. 3d 1153, 1159-60 (9th Cir. 2012)(Administrative law judge erred in rejecting opinion of treating psychologist in disability benefits hearing).

The government, however, has not submitted any evidence of the IRS's rationale in adopting the definition in 42 U.S.C. §1395x(r). R&R at 15. The IRS, therefore, has not provided any explanation for its decision, let alone a "rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43. The IRS may conceivably view doctors without medical degrees to be generally unqualified to make the determination required under section 6511, and may have determined that, in view of the "need to fairly and efficiently process a potentially large number

---

[3] As the Magistrate Judge explained, the Social Security Administration and the IRS's definitions of "disability" are, in relevant part, identical. Compare 42 U.S.C. §423(d)(1)(A) with 26 U.S.C. §6511(h)(2)(A).

of [refund] claims," <u>Abston</u>, 691 F. 3d at 996, a case-by-case determination of whether a given psychologist is nevertheless qualified is unwarranted. However, as explained earlier, at least where the IRS's reasoning is not obvious, the court may not supply an explanation for the IRS's choice that the agency itself has not given. <u>See</u> <u>State Farm</u>, 463 U.S. at 43.

The government argues, in the alternative, that the Magistrate Judge erred in rejecting its argument that the Estate's claim was untimely filed for the additional reason that the psychologist's letter was filed with the Estate's initial appeal, and not with the refund claim, as required by Revenue Procedure 99-21, §4. The Magistrate Judge, however, correctly found that "where refund claims may technically be deficient by virtue of missing some piece of information," courts generally "accept the missing information at a later stage so it and the taxpayer's claim may be considered." Report and Recommendation at 17 n. 4 (citing <u>Abston</u>, 691 F.3d at 995 (where claim for refund was denied as untimely for failure to submit certain information, plaintiff permitted on appeal to IRS to submit the missing information) and <u>Walter v. United States</u>, 2009 WL 5062391, at *10 (W.D.P.A. Dec. 16, 2009)("No case has ever held that a treating physician's statement that contains a technical deficiency that is easily corrected is insufficient under 6511(h). On the contrary, there is a doctrine of allowing informal refund claims that are 'deficient

merely in one or two of the technical requirements imposed by the Treasury regulation.'").

The IRS does not contest that Dr. Stanley Schneider's letter establishes that Carlton Stauffer's impairments constituted a "financial disability" sufficient to suspend the limitations period for filing his refund claim under 26 U.S.C. §6511(h). Therefore, the motion to dismiss is being denied without prejudice. If the government possesses evidence that the IRS considered reasonably obvious alternatives in excluding psychologists from the definition of "physicians" in Revenue Procedure 99-21, or if it believes that the court lacks authority to review the Revenue Procedure for the reasons discussed supra, at n. 2, it may submit such evidence or argument with a motion for summary judgment.

VI. ORDER

1. The attached Report and Recommendation (Docket No. 29) is ADOPTED in part and MODIFIED in part, as described in this Memorandum and Order.

2. Defendant's Motion to Dismiss is DENIED without prejudice.

3. This case is REFERRED to the Magistrate for pretrial purposes, including a Report and Recommendation on any motion for summary judgment.

UNITED STATES DISTRICT JUDGE

J

21

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Hoff Stauffer, Administrator of
the Estate of Carlton Stauffer,

       Plaintiff,

v.

Internal Revenue Service,

       Defendant.

No. 15-CV-10271-MLW

**REPORT AND RECOMMENDATION ON DEFENDANT UNITED STATES' MOTION TO DISMISS
(DKT. NO. 19)**

CABELL, U.S.M.J.:

This matter comes before the Court on the United States'
Motion to Dismiss.[1] (Dkt. No. 19).  Hoff Stauffer ("the plaintiff"
or Stauffer) is the administrator of the estate of his late father,
Carlton Stauffer.  In 2013, Stauffer filed several years' worth of
estate tax returns with the United States Internal Revenue Service
(the IRS or "the defendant"), and requested for the 2006 tax year
a refund for an overpayment of more than $100,000.  The IRS denied
the claim as untimely under the statute.  The plaintiff concedes
that he filed the refund claim late but argues that the limitations

---

[1] Though the complaint names the Internal Revenue Service, the proper defendant
in civil actions for federal tax refunds is the United States.  *See* 28 U.S.C.
§ 1346(a)(1).

period was tolled because his father was financially disabled during the relevant period.  The defendant argues that the failure to comply with the statute's timing requirements divests the Court of subject matter jurisdiction.  For the reasons discussed below, I recommend that the defendant's motion to dismiss be denied.

## I.   RELEVANT FACTS

The relevant facts framing the lawsuit are apparently not in dispute.  Carlton Stauffer passed away in October 2012 at the age of 90 and the plaintiff became the administrator of the estate. (Compl. ¶¶ 5-6).  In the course of fulfilling that role the plaintiff discovered that his father had neglected to file tax returns for the tax years 2006 through 2012. (Compl. ¶ 6).  Seeking to rectify the delinquency, the plaintiff filed the outstanding returns on or about April 26, 2013. (Compl. ¶ 7).  Relevant here, the estate claimed that it overpaid taxes for the 2006 tax year by $137,403, and the plaintiff accordingly requested a refund for that amount. (Compl. ¶ 7).

On or about February 18, 2014, the IRS denied the request for refund as untimely under 26 U.S.C. § 6511. (Compl. ¶ 8).  The plaintiff pursued the claim via the IRS's internal appeals process. (Compl. ¶ 8).  The IRS will excuse a late filing if the taxpayer was "financially disabled." 26 U.S.C. § 6511(h).  In that regard, the plaintiff submitted a written explanation from a licensed psychologist who had previously treated Carlton Stauffer from 2001

until his death in 2012.   (Compl. ¶ 9).   The psychologist's explanation detailed a variety of mental and physical conditions which, he opined, had prevented Carlton Stauffer from managing his financial affairs from at least 2006 until his death.   (*Id.*).

By letter dated December 2, 2014, the IRS preliminarily rejected the plaintiff's claim.   (Compl. ¶ 11).   The IRS stated that while it will accept an explanation from a "physician," a psychologist is not a physician under the definition contained in Revenue Procedure 99-21.   (Compl. ¶¶ 11-12).   On January 7, 2015, the IRS formally denied the plaintiff's claim for a refund. (Compl. ¶ 14).

## II.   PROCEDURAL HISTORY

The plaintiff filed this action on February 5, 2015.   The complaint asserts jurisdiction pursuant to 26 U.S.C. § 7422, 28 U.S.C. §§ 1402, 1349, 1346 and 1331, and seeks a judgment for the amount of the overpayment for the year 2006, plus interest, litigation costs and attorney's fees.   On May 3, 2016, the defendant moved to dismiss for lack of jurisdiction.   On May 17, 2016, the plaintiff opposed the motion.

## III. LEGAL STANDARD

The defendant argues that the court lacks jurisdiction because the plaintiff's claim for refund was untimely under the pertinent statute.   A plaintiff bears the burden of proving that the court has jurisdiction.   *O'Toole v. Arlington Trust Co.,* 681

F.2d 94, 98 (1st Cir. 1982).  Generally, a court should apply a standard of review "similar to that accorded a dismissal for failure to state a claim" under Rule 12(b)(6).  *Menge v. N. Am. Specialty Ins. Co.,* 905 F.Supp.2d 414, 416 (D.R.I. 2012) (quoting *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995).  A court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004) (quoting *Hishon v. King & Spalding,* 476 U.S. 69, 73 (1984)).  To show that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharmaceuticals, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011)).  In deciding Rule 12(b)(1) motions, however, the court may consider materials outside the pleadings, and factual disputes may be resolved. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

IV.   **LEGAL FRAMEWORK FOR TAX REFUND CLAIMS**

A taxpayer seeking a refund of taxes erroneously or unlawfully collected may bring a federal court action against the United States.   28 U.S.C. § 1346(a)(1).   The Internal Revenue Code specifies that before doing so, though, the taxpayer must comply with the tax refund scheme established in the Code.  *United States v. Dalm,* 494 U.S. 596, 609-610 (1990).   That scheme provides that a claim for a refund must be filed with the IRS before suit can be brought, and establishes strict timeframes for filing such a claim. *United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 4 (2008).

In particular, civil claims for tax refunds are governed by 26 U.S.C. § 7422.   Pursuant to that statute, "[n]o suit or proceeding shall be maintained… until a claim for refund or credit has been duly filed with the Secretary."  26 U.S.C. § 7422.   To be duly filed under section 7422, a claim for refund must in turn be timely under 26 U.S.C. § 6511.   *Dickow v. United States*, 654 F.3d 144, 149 (1st Cir. 2011).   To be timely under section 6511, a claim for refund "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."  26 U.S.C. § 6511(a).   Applied here, both parties agree that a claim for refund for the tax year 2006 would have properly been filed within three years of the original April 15, 2007 filing

deadline, or April 15, 2010, but Carlton Stauffer had received an automatic six-month extension, so the deadline would have been October 15, 2010. The plaintiff did not submit his claim for refund until April 26, 2013, well beyond the deadline and limitations period.

However, section 6511(h) provides that the time limit for submitting a claim "shall be suspended during any period of such individual's life that such individual is financially disabled." 26 U.S.C. § 6511(h)(1). An individual is "financially disabled" if he is "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment" expected to result in death or last at least 12 months. 26 U.S.C. § 6511(h)(2)(A). One claiming a financial disability must provide proof of its existence "in such form and manner as the Secretary may require." *Id.*

Revenue Procedure 99-21 "sets forth in detail the 'form and manner' in which proof of financial disability must be provided." *Bova v. United States*, 80 Fed. Cl. 449, 455 (Fed. Cl. 2008). Among other things, and relevant here, Revenue Procedure 99-21 provides that one claiming a financial disability must submit "a written statement by a physician *(as defined in § 1861(r)(1) of the Social Security Act, 42 U.S.C. § 1395x(r))*, qualified to make the determination…" R.P. 99-21, § 4(1) (emphasis added). As such, Revenue Procedure 99-21 does not itself define the term

"physician," but instead borrows a definition of the term as used by the Social Security Administration (SSA).

As an initial matter, it is not patently obvious what the IRS deems the definition of "physician" to be in this context.   The revenue procedure refers to section "1861(r)(1)" but that is confusing because section 1861(r) does not formally contain any subsections.   Rather, section 1861(r) sets out in one large paragraph a definition for the term "physician" that includes five enumerated categories of professionals, including:  (1) "a doctor of medicine or osteopathy," (2) "a doctor of dental surgery or of dental medicine," (3) a doctor of podiatric medicine," (4) "a doctor of optometry," and (5) "a chiropractor." *See* § 1861(r). Assuming as a matter of common sense that the IRS's reference to a subsection one is meant to refer to the first enumerated category, some confusion still remains because the revenue procedure directly links section "1861(r)(1)" to "42 U.S.C. § 1395x(r)" --a statute that essentially tracks verbatim the wording and format of section 1861(r), but does not contain a corresponding reference to a subsection one.   Indeed, section 1395x(r), like section 1861(r), does not formally contain any subsections.   So, is the reference to a subsection one in section 1861(r)(1) a scrivener's error, or is it meant to purposely narrow the scope of the meaning of a physician to a doctor of medicine or osteopathy? If it is the latter, why does not the reference to section 1395x(r)

also refer to a subsection one?   The ambiguity is not lessened
when one considers that Revenue Procedure 99-21 was drafted
principally by one IRS employee and does not contain any
accompanying rationale explaining the choice of the definition of
the word "physician."[2]   It is not necessary for the Court to resolve
this question here, though, because both parties agree that,
whatever definition of "physician" controls, it does not facially
include a psychologist.

V.   **ANALYSIS**

A revenue procedure is a "statement of procedure that affects
the rights or duties of taxpayers or other members of the public
under the Code and related statutes or information that, although
not necessarily affecting the rights and duties of the public,
should be a matter of public knowledge."   26 C.F.R. §
601.601(d)(2)(i)(b).   The stated purpose of Revenue Procedure 99-
21 is to "describe[] the information that is required under §
6511(h)(2)(A) of the Internal Revenue Code in order to request
suspension of the period of limitations under § 6511 for claiming
a credit or refund of tax due to an individual taxpayer's financial
disability."   *See* R.P. 99-21, § 1.

---

[2] At the end of RP 99-21, and under the heading "DRAFTING INFORMATION," one is
informed that "[t]he principal author of this revenue procedure is Paul E.
Tellier of the Office of Assistant Chief Counsel (Income Tax and Accounting)."

"An agency's interpretation of a statute that it administers may warrant judicial deference, depending on the degree to which the agency's exposition of the issue is deemed authoritative." *Merrimon v. Unum Life Ins. Co. of America*, 758 F.3d 46, 54 (1st Cir. 2014). Agencies speak in a variety of ways, and therefore authoritativeness often depends on context. *Id.* On the one hand, when an agency speaks with the force of law, the agency's interpretation is due judicial deference, known as *Chevron* deference, as long as its interpretation is reasonable. *Id. See also Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). But when an agency speaks with something less than the force of law its interpretations are not entitled to *Chevron* deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."). Such interpretations are entitled to deference "only to the extent that those interpretations have the 'power to persuade.'" *Merrimon*, 758 F.3d at 55 (quoting *Christensen*, 529 U.S. at 587). Under this lower standard of review, known as the *Skidmore* standard, courts look to a variety of factors, including the thoroughness of the agency's consideration, the validity of its reasoning, and the consistency of its interpretation with earlier and later

pronouncements. *Doe v. Leavitt*, 552 F.3d 75, 81 (1st Cir. 2009).
*See also Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

With respect to IRS revenue procedures, courts generally have
tended to treat them as non-binding and not entitled to *Chevron*
deference. *See Exxon Mobil Corp. & Affiliated Cos. v. C.I.R.*, 689
F.3d 191, 200-201 (2d Cir. 2012) (revenue procedure not entitled
to *Chevron* or *Skidmore* deference); *Tualatin Valley Builders
Supply, Inc. v. United States,* 522 F.3d 937 (9th Cir.
2008) (without deciding the issue, applying *Skidmore* rather than
*Chevron* standard); *Federal Nat. Mortg. Ass'n v. United States*, 379
F.3d 1303, 1307-08 (Fed. Cir. 2004) (revenue procedure not entitled
to *Chevron* deference); *Battle Flat, LLC v. United States*, 2015 WL
5554807, at *3 (D.S.D. Sept. 21, 2015) (assuming revenue procedures
not entitled to *Chevron* deference); *In re Peterson*, 321 B.R. 259,
261 (D. Neb. 2004) (revenue procedure not entitled to *Chevron*
deference). Some courts have suggested IRS revenue procedures may
not even be entitled to *Skidmore* deference. *See Corbalis v.
C.I.R.*, 142 T.C. 46, 54 (Tax Ct. 2014) (revenue procedure not
entitled to deference); *Exxon Mobil Corp. & Affiliated Cos. v.
C.I.R.*, 689 F.3d 191, 200 (2d Cir. 2012) (revenue procedure
"entitled to little, if any, deference"); *Marandola v. United
States*, 76 Fed. Cl. 237, 246 n.14 (Fed. Cl. 2007) (revenue
procedures "can, where they set out a persuasive rationale, be
entitled to limited *Skidmore* deference"). The First Circuit has

apparently not yet had occasion to address the issue directly but it has held in an analogous case that an agency's interpretative guidance is not entitled to *Chevron* deference where the agency simply co-opts an existing definition designed by a different agency for use in connection with a different statute. *See Navarro v. Pfizer Corp.,* 261 F.3d 90 (1st Cir. 2001) (holding in an FMLA lawsuit that EEOC interpretative guidance issued pursuant to the ADA was not entitled to *Chevron* deference when applied in FMLA context, particularly where EEOC never had any authority to promulgate regulations pursuant to the FMLA).  And perhaps not surprisingly, the Department of Justice has publicly announced that it no longer advocates for *Chevron* deference for revenue procedures.[3]  Against this backdrop, I conclude similarly that Revenue Procedure 99-21 is not binding and is not entitled to *Chevron* deference.

That does not end the inquiry, however.  The precedent cited above suggests that even if not accorded *Chevron* deference, a revenue procedure may warrant deference if it survives scrutiny under the *Skidmore* standard.  *See e.g., Navarro,* 261 F.3d at 99

---

[3] Marie Sapirie, *DOJ Won't Argue for Chevron Deference for Revenue Rulings and Procedures, Official Says*, taxanalysts (May 12, 2011), http://www.taxhistory.org/www/features.nsf/Articles/2EC3B72AF2B851808525788E0 056818B?OpenDocument (Last visited: Jan. 30, 2017) ("The Department of Justice will no longer argue for *Chevron* deference for revenue rulings and revenue procedures, said Gilbert Rothenberg, appellate section chief in the DOJ's Tax Division.").

(choosing to apply *Skidmore* standard to agency's regulation where *Chevron* deference not warranted).  As noted, under the *Skidmore* standard an agency's interpretation of its regulations will be entitled to deference only to the extent those interpretations have the power to persuade, a determination which turns on a number of factors such as the "thoroughness evident in the guidance's consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Navarro,* 261 F.3d at 99 (citing *Skidmore,* 323 U.S. at 140) (internal alteration marks omitted); *Doe v. Leavitt*, 552 F.3d 75, 81 (1st Cir. 2009). This is where the IRS's reliance on Revenue Procedure 99-21 falls short.

The purpose of Revenue Procedure 99-21 is to provide guidance for taxpayers who need to show a disability under section 6511 to excuse their late filing.  To that extent, Revenue Procedure 99-21 at its most basic level requires the taxpayer to bring a doctor's note, an entirely reasonable proposition.  However, section 6511(h) allows a disability to be based on a showing of a "mental impairment" and Revenue Procedure 99-21 directly undermines that goal where it demands a note from a physician but then defines that term to exclude a whole class of professionals generally considered competent to opine on the existence of a mental impairment.  On the record before the Court, there is no evidence that the IRS has considered the implications of its

interpretation of the word "physician" as used in the revenue procedure.  On the contrary, and as noted, Revenue Procedure 99-21 was drafted principally by a single IRS employee who without elaboration or explanation selected a definition of "physician" as used by the SSA.  In the absence of additional information, there is just no basis to assess the soundness of the IRS's interpretation of the word "physician" in Revenue Procedure 99-21.

Moreover, if the IRS's goal was to look to the SSA for instructive guidance on who may be competent to opine on a disability based on a physical or mental impairment, then its interpretation of the word "physician" in Revenue Procedure 99-21 directly contravenes that purpose, because the SSA *does* permit psychologists to opine on whether an individual is disabled as a result of a mental impairment.  *See* 20 CFR § 404.1527(a)(2) ("[m]edical opinions are statements from physicians *and psychologists* or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)….") (emphasis added).  *See also Weiler v. Shalala*, 922 F.Supp. 689, 696 n.10 (D. Mass. 1996) ("The opinion of a treating psychologist is considered an acceptable medical source under the treating-physician rule.").  Indeed, the SSA and IRS both use definitions of "disability" that are in relevant part virtually identical. *Compare* 42 U.S.C. § 423(d)(1)(A) ("The term "disability" means the

inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.*") with 26 U.S.C. § 6511(h)(2)(A) ("an individual is financially disabled if such individual is unable to manage his financial affairs *by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.*") (emphasis added). So, to the extent the goal underlying Revenue Procedure 99-21 was to implement a disability-determination process based on principles consistent with those of the SSA, the interpretation of "physician" urged by the government here undermines that purpose where the SSA treats psychologists as physicians and welcomes their medical opinions in disability determination matters.

To be clear, this is not to suggest that the IRS should have also incorporated the SSA's regulation endorsing the acceptance of medical opinions from psychologists, or defined "physician" more broadly to encompass and reflect the SSA's practice. Rather, the point is that where the IRS has taken its definition of "physician" from an agency that demonstrably does not interpret it in practice to exclude psychologists from opining on a patient's impairment, the failure of the IRS to provide any insight explaining the

14

deliberative process it went through in implementing Revenue Procedure 99-21 gives rise to the concern that the IRS did not thoroughly consider the implications of interpreting the word "physician" as it did, or how applying that definition might thwart a taxpayer's ability to show a legitimate mental impairment-based disability, or how, if the IRS did consider such things, why the policy should nonetheless be enforced.

Perhaps the IRS is in possession of such information. On the present record, though, I am not persuaded that the Court should defer to the defendant's view that a psychologist's statement describing a mental impairment cannot constitute a physician's statement within the meaning of Revenue Procedure 99-21.

None of the authority cited by the defendant compels a different result. In *Abston v. Commissioner,* 691 F.3d 992 (8th Cir. 2012), the court found that the plaintiff failed to satisfy the requirements of Revenue Procedure 99-21 because she failed to submit a physician's statement at all; the court never considered the issue of whether a statement from a psychologist might also suffice. *Abston,* 691 F.3d at 996 ("Because Abston failed to submit a physician's statement altogether, we agree with the district court that she did not provide the IRS with probative evidence of financial disability."). Similarly, all of the cases cited by the *Abston* court and relied on by the defendant either explicitly involve *physical* impairments -the sort of impairment one might not

15

consider a psychologist competent to comment on, or make no mention of the type of impairment, but none discusses the appropriateness of relying on a psychologist's statement to satisfy Revenue Procedure 99-21 or section 6511(h).  The defendant does cite to one case where the Tax Court observed that a psychologist is not a physician under Revenue Procedure 99-21.  *See Green v. Commissioner,* 97 T.C.M (CCH) 1542 (2009).  In that case, however, the IRS itself appears to have accepted and considered the psychologist's letter opining that the taxpayer suffered from a mental impairment, and instead argued only that the facts demonstrated that the taxpayer was actually able to handle her financial affairs and thus was not disabled.  *Id.*  Regardless, the Tax Court has also noted that revenue procedures are not entitled to deference where, as here, "[t]here is no reasoning in support of the conclusion stated in the revenue procedure." *Corbalis*, 142 T.C. at 54.

In sum, I conclude that the defendant's interpretation of the term "physician" in Revenue Procedure 99-21 is not entitled to deference here.  I conclude further that to the extent the psychologist's statement the plaintiff submitted supports a financial disability based on a mental impairment, the IRS was not required to reject it on the ground that it did not constitute a "physician's" statement.  Consequently, I find no basis on this record to deem the plaintiff's claim for refund untimely under

section 6511(h), and thus do not agree that the Court lacks jurisdiction to hear the plaintiff's suit.[4]

## VI.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the defendant's Motion to Dismiss be DENIED.  The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The

---

[4] The defendant raises two additional points that merit brief attention.  First, the defendant argues that even assuming a psychologist's statement is acceptable, the plaintiff's claim still fails because the plaintiff did not submit the statement at the same time he submitted the claim for refund, but instead submitted it with the estate's initial appeal.  I reject this argument, as have other courts.  Where refund claims may technically be deficient by virtue of missing some piece of information, the practice is to accept the missing information at a later stage so it and the taxpayer's claim may be considered.  See Abston, 691 F.3d at 995 (where claim for refund was denied as untimely for failure to submit certain information, plaintiff permitted on appeal to IRS to submit the missing information); see also Walter v. United States, 2009 WL 5062391, at *10 (W.D.P.A. Dec. 16, 2009) ("No case has ever held that a treating physician's statement that contains a technical deficiency that is easily corrected is insufficient under 6511(h). On the contrary, there is a doctrine of allowing informal refund claims that are 'deficient merely in one or two of the technical requirements imposed by the Treasury regulation.' ") (quoting Commissioner v. Ewing, 439 F.3d 1015 (9th Cir. 2006)).  Finally, the defendant argues in a closing footnote, and without citation to any authority, that it is "questionable" whether the psychologist was qualified to opine that Carlton Stauffer was disabled where the psychologist appears to have based his determination in part on the taxpayer's physical ailments, matters outside a psychologist's area of expertise.  The sufficiency of the psychologist's statement is not before the Court so there is no need to address this claim.  But, even assuming the psychologist may not have been qualified to assess the significance of Mr. Stauffer's physical impairments, it does not mean that his mental impairments were not sufficient on their own to support a determination of financial disability.

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  February 14, 2017