UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HOFF STAUFFER, ADMINISTRATOR  )
OF THE ESTATE OF CARLTON      )
STAUFFER,                     )
    Plaintiff,                )
                    )   C.A. No. 15-10271-MLW
      v.                      )
                    )
INTERNAL REVENUE SERVICE,     )
    Defendant.                )

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 29, 2018

I.   INTRODUCTION

On April 26, 2013, plaintiff Hoff Stauffer ("Hoff"), as administrator of the estate of his father (the "Estate"), Carlton Stauffer ("Carlton"), filed a 2006 tax return and sought a refund from the Internal Revenue Service ("IRS" or the "government")[1] for allegedly overpaid federal taxes for that year. The claim was untimely under 26 U.S.C. §6511, which requires that such a claim be filed within three years of the time the tax return was filed or two years from the time the tax was paid if no return was filed, whichever is later.

However, the Estate argues that the statute of limitations was tolled, pursuant to §6511(h)(2), because Carlton suffered from a "financial disability." To prove the alleged disability, the

---

[1] The proper defendant in this case is the United States, rather than the IRS. See 28 U.S.C. §1346(a)(1).

Estate submitted a letter from Carlton's psychologist. The IRS nevertheless denied the claim as untimely because Revenue Procedure 99-21 requires that a person claiming financial disability submit a statement from a "physician," which the IRS defined in a way that excluded psychologists.

The Estate subsequently sued. The government moved to dismiss, arguing that Carlton was not financially disabled because the Estate did not provide evidence of the alleged disability from a "physician." Therefore, it argued, the statute of limitations had run and the court lacked jurisdiction. On September 29, 2017, the court denied the motion to dismiss because it found that the IRS's explanation for why its definition of "physician" excluded psychologists was arbitrary. See Docket No. 31.

The government now moves again to dismiss or, in the alternative, for summary judgment. It contends that Carlton was not financially disabled, pursuant to 26 U.S.C. §6511(h)(2)(B), because Hoff was authorized to act on Carlton's behalf in financial matters. On August 17, 2018, the Magistrate Judge issued a Report and Recommendation (the "R&R") recommending that the motion be granted. See Docket No. 67. The Magistrate Judge found that Hoff had the authority to act on Carlton's behalf in financial matters from at least June 2009 until Carlton's death in October 2012. The Magistrate Judge reasoned that: a three-year statute of

limitations applied;[2] the statute of limitations was tolled for the 26-month period between April 2007 and June 2009, during which Hoff was authorized to act on Carlton's behalf in financial matters; the statute of limitations expired in December 2012;[3] the Estate's filing in April 2013 was untimely; and, therefore, this court lacks jurisdiction. The Estate filed objections. The government did not.

---

[2] The Magistrate Judge assumed that the statute of limitations for filing a suit for a refund in this case is three years. See R&R at 10, 15. Neither party objected to this. However, it appears that the statute of limitations in this case is two years. 28 U.S.C. §7422(a) states that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . collected . . . until a claim for a refund . . . has been duly filed with the Secretary [of the Treasury] . . . ." (emphasis added). To be "duly" filed, a claim for a refund must be timely filed under 26 U.S.C. §6511. See Dickow v. United States, 654 F.3d 144, 149 (1st Cir. 2011); C.I.R. v. Lundy, 516 U.S. 235, 241 (1996). Section 6511(a) states that a claim for a refund "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." In this case, no return was filed until 2013. Absent tolling due to "financial disability," no return was "duly" filed, and the statute of limitations would be two years, rather than three years. As "financial disability" is the present issue to be decided, and on this court's analysis there was no period of "financial disability," the issue of whether the statute of limitations is two or three years is not material.

[3] The Estate received an automatic six-month extension from April 2007 to October 2007 to file the return for 2006. See Sept. 29, 2017 Mem. & Order at 27 (Docket No. 31). Therefore, absent the 26-month suspension, a three-year statute of limitations would have expired in October 2010. See id. The Magistrate Judge calculated the 26-month period as running from October 2010 to find that the statute of limitations expired in December 2012. See R&R at 15.

For the reasons explained below, the motion to dismiss is being granted. In essence, the court finds that Hoff had the authority to act on Carlton's behalf in financial matters from October 2005 until Carlton's death in October 2012; the statute of limitations was not tolled; if it was the maximum three-years, the statute of limitations expired in October 2010; the Estate's filing in April 2013 was untimely; and, therefore, this court lacks jurisdiction.

II.   LEGAL STANDARDS

  A. <u>Review of a Magistrate's Disposition</u>

Federal Rule of Civil Procedure 72(b)(3) requires that the court review "<u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to." "Conclusory objections that do not direct the reviewing court to the issues in controversy" are not proper under Rule 72(b). <u>Velez-Padro v. Thermo King De P.R., Inc.</u>, 465 F.3d 31, 32 (1st Cir. 2006). Moreover, "[a party is] not entitled to a de novo review of an argument never raised" before the magistrate judge. <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987). "Parties must take before the magistrate, 'not only their "best shot" but all of their shots.'" <u>Id.</u> (quoting <u>Singh v. Superintending Sch. Comm. of City of Portland</u>, 593 F. Supp. 1315, 1318 (D. Me. 1984)).

Waiver of <u>de novo</u> review by failing to file proper objections does not entitle a party to "some lesser standard" of review.

Thomas v. Arn, 474 U.S. 140, 149-50 (1985); see also Costa v. Hall, 2010 WL 5018159, at *17 (D. Mass. Dec. 2, 2010) ("Absent objections, the court may adopt the report and recommendation of the magistrate judge."). However, review by the court in such circumstances is not prohibited, and some level of oversight, even if not de novo, is encouraged. See Henderson v. Carlson, 812 F.2d 874, 878 (3rd Cir. 1987).

B. Sovereign Immunity

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Dalm, 494 U.S. 596, 608 (1990). The United States authorizes individuals to sue for a refund of taxes "erroneously or illegally assessed or collected . . . under the internal revenue laws." 28 U.S.C. §1346(a). The Internal Revenue Code, however, establishes the terms of the consent given in §1346. Before suing, "the taxpayer must comply with the tax refund scheme established in the Code," which provides that "a claim for a refund must be filed with the [IRS] before suit can be brought, and establishes strict timeframes for filing such a claim." United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 4 (2008).

In particular, as indicated earlier, 26 U.S.C. §7422(a) specifies that:

> No suit or proceeding shall be maintained in any court
> for the recovery of any internal revenue tax alleged to
> have been erroneously or illegally assessed or collected
> . . . until a claim for refund or credit has been <u>duly</u>
> filed with the [IRS], according to the provisions of law
> in that regard, and the regulations of the Secretary [of
> the Treasury] established in pursuance thereof.

(emphasis added). In <u>C.I.R. v. Lundy</u>, the Supreme Court explained

the time limits for filing a claim for a refund with the IRS:

> [26 U.S.C. §6511] contains two separate provisions for
> determining the timeliness of a refund claim. It first
> establishes a <u>filing deadline</u>: The taxpayer must file a
> claim for a refund "within 3 years from the time the
> return was filed or 2 years from the time the tax was
> paid, whichever of such periods expires the later, or if
> no return was filed by the taxpayer, within 2 years from
> the time the tax was paid." §6511(b)(1) (incorporating by
> reference §6511(a)).

516 U.S. 235, 239-40 (1996).

The statute, however, also establishes a "<u>look-back</u>" period.

<u>Id.</u> at 240. If the taxpayer files the refund claim within three

years from the time the return was filed, the taxpayer is entitled

to a refund only of the taxes he paid within the three years (plus

the period of any extension for filing the return) before he filed

the claim. <u>See</u> 26 U.S.C. §6511(b)(2)(A).

The Supreme Court has written that "[a]lthough [courts]

should not construe such [] time-bar provision[s] unduly

restrictively, [they] must be careful not to interpret [them] in

a manner that would extend the waiver [of sovereign immunity]

beyond that which Congress intended." <u>Dalm</u>, 494 U.S. at 608. It

has held that "unless a claim for refund of a tax has been filed

within the time limits imposed by §6511(a), a suit for refund . .
. may not be maintained in any court." Clintwood Elkhorn, 553 U.S.
at 5. Courts may not "toll, for non-statutory equitable reasons,
the statutory time . . . limitations for filing tax refund claims
set for in [§6511]." United States v. Brockamp, 519 U.S. 347, 348
(1997). Therefore, absent some form of statutory tolling, a
claimant cannot by filing a claim in 2013, obtain a refund for the
2006 tax year.

Section §6511(h) provides for statutory tolling of the
limitations period in limited circumstances. In particular, the
time limit for submitting a claim to the IRS "shall be suspended
during any period of [an individual taxpayer's] life that such
individual is financially disabled." 26 U.S.C. §6511(h)(1). An
individual is "financially disabled" if he is "unable to manage
his financial affairs by reason of a medically determinable
physical or mental impairment of the individual which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months." Id.
§6511(h)(2)(A). However, an individual is not "financially
disabled" "during any period that such individual's spouse or any
other person is authorized to act on behalf of such individual in
financial matters." Id. §6511(h)(2)(B). Therefore, in this case,
whether the Estate's refund claim filed in 2013 for the 2006 tax
year was timely depends on whether Carlton was financially

disabled, and if so, for what period. Whether Carlton was financially disabled depends on whether Hoff was authorized to act on his behalf in financial matters during the period of any financial disability.

C. Subject Matter Jurisdiction

"Once challenged, the party invoking subject matter jurisdiction [in this case the Estate] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (internal quotations omitted). "There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). In a facial challenge, the court accepts allegations in the complaint as true and decides whether, if proven, they would establish jurisdiction. See id.

In a factual challenge, "the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Id. at 163. When "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." Id. However, when "the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the

8

plaintiff's claim . . . the [] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

With regard to jurisdiction, the question is whether the statute of limitations for requesting a tax refund expired before Hoff filed a refund claim on April 26, 2013. The parties have presented evidence on this issue. Therefore, the case presents a factual, not facial, challenge to this court's subject matter jurisdiction. Accordingly, the court must first decide whether the facts relevant to determining jurisdiction also implicate elements of the plaintiff's cause of action.

The facts relevant to jurisdiction are whether Carlton was financially disabled and, if so, whether the statute of limitations was not tolled because Hoff was authorized to act on Carlton's behalf in financial matters. In contrast, "[t]he facts needed to determine whether a [refund] claim is valid include the amount of tax liability and all tax payments made, since a tax refund, by definition, is the amount paid in excess of tax liability." Williams v. United States, 112 Fed. Cl. 67, 75 (2013). "[T]he determination of whether the claim is time-barred bears no relationship to whether the plaintiff can make out a showing . . . on the merits of the case." Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002); see also Shields v. United States, 136 Fed. Cl. 37, 44 (2018).

9

Therefore, the facts relevant to whether this court has jurisdiction are not intertwined with the merits of the Estate's claim for a refund. Accordingly, "the [] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Torres-Negron, 504 F. 3d at 163. In doing so, it finds that the Estate has not proven that jurisdiction exists.

III. RELEVANT FACTS

The court adopts the facts that are undisputed as recited in the Magistrate Judge's Report and Recommendation, see R&R at 3-6 (Docket No. 67), and others proven by a preponderance of the evidence, for which citations to the record are provided.

On October 10, 2005, Carlton, a Pennsylvania citizen who at all relevant times was not married, executed a written durable power of attorney giving his son, Hoff, power of attorney over his affairs (the "Durable POA"). Hoff also executed the Durable POA. Among other things, the Durable POA authorized Hoff to file tax returns on his father's behalf. It also provided that Carlton could revoke it by "giving [Hoff] written notification," which would "not be considered binding unless actually received." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. 1, at 9 (Docket No. 61-1). The Durable POA does not address whether or how Hoff could terminate his authority under it.

Hoff used the Durable POA to conduct financial transactions on his father's behalf. For example, in 2006, he collected

unclaimed funds in Carlton's name and tried to sell Carlton's business. He also used the Durable POA to open an account in his father's name at T. Rowe Price. See Def.'s Decl., Ex. 4, at 11 (Docket No. 65-4). In doing so, Hoff executed another power of attorney that was specific to the T. Rowe Price account (the "TRP POA"). See id.; Def.'s Decl., Ex. 11 (Docket No. 65-11).

On or about March 15, 2006, the Carlton and Hoff argued. As a result, Carlton stopped speaking with Hoff. See Pl.'s Decl., Ex. 4, at 3-4 (Docket No. 66-4). He also drafted three notices revoking the Durable POA. However, they were not sent to Hoff or received by him.

At about the same time, Hoff told his father "that he would no longer be exercising any rights granted to him under the [Durable] POA." Pl.'s Decl., Ex 5, at 2 (Docket No. 66-5). Hoff also told his sister, Carlton's accountant, and Carlton's attorneys that he was no longer acting as Carlton's agent under the Durable POA.

The Stauffers evidently eventually reconciled. In May or June 2009, Hoff withdrew $1.25 million from the T. Rowe Price account to purchase a home for himself. In 2012, he withdrew $100,000 from the same account at Carlton's request.[4]

---

[4] The Estate argues that these transactions were done pursuant to the TRP POA, not the Durable POA. See Pl.'s Obj. to R&R at 2 (Docket No. 71). As explained below, whether Hoff acted under the Durable POA or TRP POA is not material because the court finds

Carlton died on October 29, 2012. Hoff then became the administrator of Carlton's estate. Hoff subsequently discovered that his father had not filed tax returns for the tax years 2006 through 2012. On April 26, 2013, Hoff filed those returns with the IRS. He claimed that his father overpaid taxes for 2006 by $137,403, and requested a refund to the Estate in that amount.

On February 18, 2014, the IRS denied the Estate's claim for a refund as untimely pursuant to 26 U.S.C. §6511. The Estate filed an internal appeal. It argued that the statute of limitations was tolled, under 26 U.S.C. §6511(h), because Carlton was "financially disabled." To support this contention, the Estate submitted an April 9, 2014 statement from Carlton's psychologist, Dr. Stanley Schneider, Ed.D. Dr. Schneider wrote that Carlton suffered from "mental and physical impairments" that "severely and negatively impacted" his "mental capacity, cognitive functioning, decision making, and emotional well-being," and prevented him from managing his financial affairs <u>from</u> <u>2006</u> until his death.[5] Def.'s Decl., Ex. 12, at 6 (Docket No. 65-12) (emphasis added).

---

that the Durable POA was valid until Carlton's death in 2012 and, therefore, Hoff was authorized to act on Carlton's behalf in financial matters from October 2005 until Carlton's death.

[5] In the instant case, the Estate has also submitted a May 1, 2016 statement from Dr. Schneider, who again opined that "[Carlton's] physical and mental impairments prevented him from managing his financial affairs" from 2006 to 2012. Pl.'s Decl., Ex. 6, at 4 (Docket No. 66-6).

IV.   PROCEDURAL HISTORY

The Estate seeks a judgment in the amount of the Estate's overpayment for tax year 2006, plus interest, litigation costs, and attorney's fees. The government first moved to dismiss the complaint for lack of jurisdiction because the Estate did not provide evidence sufficient to prove that Carlton was financially disabled and, therefore, the statute of limitations had run.

The court referred the case to the Magistrate Judge for pretrial purposes and a Report and Recommendation on the government's motion. The Magistrate Judge recommended that the motion be denied. See Docket No. 28. The court adopted the Report in part and modified the Report in part. See Mem. & Order (Docket No. 31). It denied the motion to dismiss because the IRS failed to explain why excluding psychologists from the definition of "physician" was not arbitrary. Id.

The government again moves to dismiss or, in the alternative, for summary judgment. See Def.'s Mot. to Dismiss (Docket No. 57). For present purposes, the government does not contend that Carlton was at relevant times able to manage his financial affairs personally. Rather, as indicated earlier, the government now argues that Carlton was not financially disabled, pursuant to 26 U.S.C. §6511(h)(2)(B), because the Durable POA authorized Hoff to act on Carlton's behalf in financial matters. In his August 17, 2018 Report, the Magistrate Judge recommended that the motion be

granted. See Docket No. 67. In particular, the Magistrate Judge found that the Durable POA: was validly executed by Carlton and Hoff in 2005; authorized Hoff to act on behalf of Carlton in financial matters; was renounced by Hoff in March 2006; and was revived by the T. Rowe Price transaction in June 2009. See id. at 12-18. Therefore, the Magistrate Judge reasoned that: a three-year statute of limitations was tolled for the 26-month period between April 2007 and June 2009, during which Hoff was not authorized to act on Carlton's behalf in financial matters; the statute of limitations expired in December 2012, four months before the Estate filed the refund claim in April 2013; and, therefore, this court lacks jurisdiction.

As also indicated earlier, the Estate objects to the August 17, 2018 Report and Recommendation on several grounds. See Pl.'s Obj. to R&R (Docket No. 71).[6] As explained below, while the court does not agree with the Magistrate Judge's reasoning, it finds that the result he reached is correct--this court lacks jurisdiction and the case must be dismissed.

---

[6] The government did not file objections, but has responded to the Estate's objections. See Def.'s Reply to Pl.'s Obj. to R&R (Docket No. 73).

## V.   DISCUSSION

### A. Carlton had the capacity to execute the Durable POA.

As indicated earlier, the Magistrate Judge concluded that the Durable POA was validly executed by Carlton and Hoff in 2005. See R&R at 16. More specifically, the Magistrate Judge applied Pennsylvania law and found that "the [Estate] has not pointed to any evidence in the record . . . to raise a serious issue to suggest that Carlton Stauffer was incompetent when he executed the POA." Id. The Estate argues that federal common law, not Pennsylvania law, governs the validity of the Durable POA, and that under federal common law the Durable POA was not valid because Carlton was mentally incompetent in 2005. See Pl.'s Obj. to R&R at 16-17 (Docket No. 71).

The Estate invokes this court's jurisdiction under the Internal Revenue Code. See Compl. at 1 (Docket No. 1). "When jurisdiction is not based on diversity of citizenship, choice of law questions are appropriately resolved as matters of federal common law." See Edelmann v. Chase Manhattan Bank, 861 F.2d 1291, 1294 n.14 (1st Cir. 1988); see also Berger v. C.I.R., 1996 WL 76177, at *15 (T.C. Feb. 22, 1996). Federal choice of law principles are derived from the Restatement (Second) of Conflict of Laws. See Edelmann, 861 F.2d at 1295 ("For a refinement of the choice of law analysis, we turn to the Restatement (Second) of Conflict of Laws.") (italics omitted); In re NeuroGrafix ('360)

Patent Litig., 5 F. Supp. 3d 146, 151-52 (D. Mass 2014); Berger, 1996 WL 76177 at *15. Under the Restatement, the applicable state law is that which "has the most significant relationship to the transaction and the parties . . . ." Restatement (Second) of Conflict of Laws §188(1) (Am. Law Inst. 1971). The Restatement identifies several factors for the court to consider in making the choice of law, including: the place of contracting, negotiation, and performance; "the location of the subject matter of the contract"; and the domicile of the parties. See id. §188(2).

All of these Restatement factors favor application of Pennsylvania law in this case. The Durable POA was executed in Pennsylvania, by a Pennsylvania citizen, and references provisions of the Pennsylvania power of attorney statute. See Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. 1, at 4, 7, 9 (Docket No. 61-1).

The Court of Federal Claims reached the same conclusion in similar circumstances. See Bova v. United States, 80 Fed. Cl. 449 (2008). In Bova, the administrators of the decedent's estate argued that the IRS erroneously denied as untimely a tax refund claim filed on behalf of the decedent. See id. at 450. The administrators asserted that the statute of limitations should have been suspended because the decedent had a financial disability, pursuant to 26 U.S.C. §6511(h). See id. The government moved to dismiss on the grounds that the decedent created a power of attorney that

16

authorized one of the plaintiffs to act on the decedent's behalf in financial matters. See id. While the court did not directly address the choice of law question, the power of attorney at issue referenced Pennsylvania statutes, and the court applied Pennsylvania law to determine whether the power of attorney was valid. See id. at 455-60.

In some cases federal courts must apply federal law despite the existence of relevant state law. More specifically, "[i]f the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision." Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000) (citing United States v. Kimbell Foods, Inc., 440 U.S. 715, 728 (1979)); InterGen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003). In InterGen, the First Circuit held that federal common law governs whether nonsignatories to a contract are bound by the Federal Arbitration Act ("FAA"). See 343 F.3d at 143-44. The court relied on the fact that Congress' "driving force" in enacting the relevant chapter of the FAA "was to set out uniform rules governing the recognition and enforcement of international arbitration awards." Id. at 143. Similarly, in Brotherhood of Locomotive Engineers, the First Circuit held that federal common law governs the veil-piercing inquiry under the Railway Labor Act. See 210 F.3d at 25-27. The court noted that "[f]ederal courts have fashioned a body of federal common law" for labor disputes. Id. at

26. The court explained that such uniform rules were necessary to "prevent[] disruptions to interstate commerce" that would otherwise result if labor disputes between railroads and workers were governed by a patchwork of state laws. Id.

The statute at issue in this case, 26 U.S.C. §6511(h), does not demand national uniformity. In contrast to InterGen, neither the text nor legislative history of §6511(h) contain indicia of Congressional intent to create uniform rules for determining mental capacity or disability. See S. Rep. 105-174, at 60 (1998); H.R. Rep. 105-364(I), at 62 (1997). Unlike in Brotherhood of Locomotive Engineers, §6511(h) neither implicates a developed body of federal common law nor threatens to interrupt the channels of interstate commerce if different state laws are relied upon to determine whether financial disability exists in various cases. Indeed, federal courts regularly apply state law to resolve disputes that implicate federal taxes. See, e.g., United States v. Brosnan, 363 U.S. 237, 241-242 (1960) (adopting state law to govern divestiture of federal tax liens); Congress Talcott Corp. v. Gruber, 993 F.2d 315, 319 (3d Cir. 1993) (applying state law to determine taxpayer's interest in property levied by federal government); Bova, 80 Fed. Cl. at 455-60. Therefore, the usual choice of law principles apply and the court finds that Pennsylvania law governs the validity of the Durable POA.

"Under Pennsylvania law, it is presumed that an adult is competent to enter into an agreement and that the signed document evidences an accurate expression of the intent of the signatories." Shafer v. State Emps.' Ret. Bd., 696 A.2d 1186, 1193 (Pa. 1997) (citing Estate of McGovern v. Commonwealth, 517 A.2d 523, 526 (Pa. 1986)). To rebut this presumption, the challenger must present evidence of mental incompetency that is "clear, precise, and convincing." Elliott v. Clawson, 204 A.2d 272, 273 (Pa. 1964). "[M]ere weakness of intellect resulting from sickness or old age will not set aside an executed contract if an individual still comprehends the nature and character of the transaction" at "the very time" of execution. Smalley v. JHA-Markleysburg, Inc., 3 Pa. D. & C. 5th 471, 478 (Pa. C.P. 2007) (internal quotations omitted).

In Smalley, an action for negligence and wrongful death, the defendants sought to enforce an arbitration agreement they entered into with the plaintiff in the plaintiff's capacity as power of attorney for the decedent. See id. at 472-73. In response, the plaintiff argued that the power of attorney was invalid because the decedent was mentally incompetent when it was created, and submitted a doctor's letter that attested to the decedent's history of mental illness. See id. at 473, 475-76. The court upheld the arbitration agreement. It found that the plaintiff not only failed to express concern that the decedent was incapacitated at the time the power of attorney was executed, but also that he used the power

of attorney to transact business. See id. at 479. As to the
doctor's letter, the court found that it was insufficient to prove
mental incapacity because it was "rendered over two years after
the death of the decedent," and "[did] not specifically describe
the decedent's mental capacity at the time of his execution of the
power of attorney." Id.

The evidence in the instant case also establishes that Carlton
was competent to execute the Durable POA in 2005. As in Smalley,
the record does not contain any evidence that Hoff believed that
Carlton was mentally incompetent at the time the Durable POA was
executed. In fact, Hoff used the Durable POA to transact business
on Carlton's behalf in 2006 when he recovered funds from the state
in Carlton's name and attempted to sell Carlton's business. In
addition, on October 17, 2012, Hoff witnessed Carlton's last will
and testament, which states that Carlton was then "of sound and
disposing mind, memory and understanding." See Def.'s Decl., Ex.
1, at 2 (Docket No. 65-1). Moreover, when Hoff petitioned the
Pennsylvania state court for adjudication of the proposed
distribution of Carlton's assets, he stated that Carlton was never
"adjudicated an incapacitated person." See Def.'s Decl., Ex. 9, at
9 (Docket No. 65-9).

In view of these facts, Dr. Schneider's 2014 and 2016 letters
opining that Carlton was not capable of managing his financial
affairs from 2006 until his death in 2012 are insufficient to rebut

the presumption that Carlton was competent when the Durable POA was created in 2005. In his 2014 statement, Dr. Schneider opined that Carlton's mental capacity "began to decline significantly during 2006." Def.'s Decl., Ex. 12, at 6 (Docket No. 65-12). He reiterated this in his 2016 letter. See Pl.'s Decl., Ex. 6, at 4 (Docket No. 66-6) (emphasis added). Although in his 2016 letter Dr. Schneider refers to some information in Carlton's pre-2006 medical record, he does not specifically describe Carlton's mental capacity at the time Carlton signed the Durable POA. See id. at 3. In addition, Dr. Schneider's two letters were written nine and eleven years after the Durable POA was executed, and two and four years after Carlton died. They are, therefore, even less compelling than the letter found to be insufficient to prove mental incompetency in Smalley.

B. Hoff was authorized under the Durable POA to act on behalf of Carlton in financial matters.

The Magistrate Judge found that the Durable POA authorized Hoff to act on behalf of Carlton in financial matters for the purposes of 26 U.S.C. §6511(h)(2)(B). In particular, he found the facts that the Durable POA did not impose a duty on Hoff to file Carlton's tax return, and that Hoff did not know his father was not filing his returns, are not relevant. See R&R at 18 (Docket No. 67). The Magistrate Judge wrote that, "[t]he statute is not concerned with whether the taxpayer's affairs were actually

managed, nor whether they were managed competently, but rather whether someone had been given the authority to act." Id. (citing Plati v. United States, 99 Fed. Cl. 634, 640 (2011)).

The Estate argues that the term "authorized" in §6511(h)(2)(B) implicitly includes requirements of a duty to act and knowledge that action is necessary. See Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 18-22 (Docket No. 61). It contends that the Durable POA did not "authorize" Hoff to act on behalf of Carlton in financial matters because it did not impose a duty on Hoff to file Carlton's tax returns and Hoff did not know that Carlton's tax returns had not been filed.

With respect to the duty element, the Estate argues that because 26 U.S.C. §6511(h)(2)(B) refers to "guardian" and "spouse," and both incorporate "a corresponding duty to care for [someone]," the term "authorized" should be interpreted to include such a duty. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 19-20 (Docket No. 61). The Estate relies in part on the definition of "guardian" as "[s]omeone who has the legal authority and duty to care for another person or property . . . ." Id. (citing "Guardian," Black's Law Dictionary (10th ed. 2014)). Hoff was neither Carlton's guardian nor spouse. Rather, he had Carlton's Durable POA.

It is axiomatic that in matters of statutory construction, the plain meaning of the statutory text generally controls. See Penobscot Nation v. Mills, 861 F.3d 324, 330 (1st Cir. 2017); Bos.

Edison Co. v. U.S. Ecology, 1996 WL 653344, at *2 (D. Mass Oct.
14, 1996). As the First Circuit has written, the court must "not
depart from, or otherwise embellish, the language of a statute
absent either undeniable textual ambiguity, or some other
extraordinary consideration, such as the prospect of yielding a
patently absurd result." United States v. Fernandez, 722 F.3d 1,
10 (1st Cir. 2013) (quoting Pritzker v. Yari, 42 F.3d 53, 67–68
(1st Cir. 1994)). If the statute does not define a term, the court
"can look to the dictionary for clarification of the plain meaning
of the words selected by Congress." L.S. Starrett Co. v. F.E.R.C.,
650 F.3d 19, 25 (1st Cir. 2011).

The Internal Revenue Code does not defined "authorized."
However, in the dictionary cited by the Estate for defining
"guardian," the definition of the term "authority" includes no
reference to a duty to act. Rather, it states that "authority" is
"[t]he official right or permission to act, esp. to act legally on
another's behalf . . . ." "Authority," Black's Law Dictionary (10th
ed. 2014). Furthermore, by referring to both "legal authority" and
"duty," the dictionary definition of "guardian" cited by the Estate
itself indicates that "authority" and "duty" are distinct. See
"Guardian," Black's Law Dictionary (10th ed. 2014).

The Estate also argues that any reading of "authorized" that
does not include a requirement that the agent know of the matter

that requires action yields an absurd result. It presents a hypothetical to support this contention:

> [S]uppose that the taxpayer--as a direct consequence of her financial disability--is incapable of informing her Agent that her tax return is in need of filing. The return goes unfiled only because the agent is unaware of the need, i.e., the agent lacked the capacity to do so. . . . [W]ere Defendant's argument herein to prevail the taxpayer would be barred from claiming her refund as a direct consequence of her own financial disability, a patent contravention of legislative intent.

Pl.'s Opp'n to Def.'s Mot. to Dismiss at 21 (Docket No. 61).

This argument is not persuasive. Section §6511(h) was enacted in response to Brockamp, supra. In Brockamp, the taxpayer sought equitable tolling of the statute of limitations to file a refund claim to due mental disability. See 519 U.S. at 348. The Supreme Court denied his claim, holding that equitable tolling does not apply to §6511. See id. at 354. It reasoned that "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." Id. at 353-54.

However, in enacting §6511(h) Congress and the President did not authorize courts to "resort to principles of equity jurisprudence to grant relief to those who are financially disabled" if the terms of the statute result in an unfortunate outcome for the taxpayer. Katz v. United States, 2006 WL 2418837,

24

at *4 (Fed. Cl. July 25, 2006). Rather, "Congress provided for one specific set of circumstances that would toll the statute of limitations." Id. "Congress could have used more general language, but it chose not to." Id. Accordingly, courts have interpreted the term "authority" in §6511(h)(2)(B) according to its plain meaning.

In Plati, for example, the taxpayer alleged that the IRS erred in denying a tax refund claim because it was untimely. See 99 Fed. Cl. at 640. The plaintiff argued that she was financially disabled and that her attorney-in-fact was not "authorized" to act on her behalf in financial matters because she had forbidden her attorney-in-fact from managing her financial affairs. See id. The court, however, found for the government, reasoning that "it is a person's authority to manage a taxpayer's financial matters, and not the exercise of that authority, that is relevant to determining whether a taxpayer may claim financial disability." Id. Similarly, the court wrote in Bova that, "[t]he statute is not concerned with whether the taxpayer's affairs were actually managed, nor whether they were managed competently, but rather whether someone had been given the authority to act." 80 Fed. Cl. at 458 n.12.

This court agrees. It must apply the plain meaning of the statute in this case, which involves a limited waiver of sovereign immunity. As indicated earlier, the Supreme Court has admonished lower courts to be "careful not to interpret [statutes of limitations] in a manner that would extend the waiver [of sovereign

25

immunity] beyond that which Congress intended." Dalm, 494 U.S. at 608. It is, therefore, doubtful that this court could properly fail to apply the plain meaning of the statute even if it produced an "absurd" result. However, applying the plain meaning of the statute to find the Estate's claim in this case to be time-barred is not an "absurd" result. Whether by using the Durable POA or TRP POA, Hoff, presumably with his father's consent, withdrew $1,250,000 from Carlton's T. Rowe Price account in 2009 to buy himself a house. It is not absurd to expect that Hoff would have used the Durable POA to file his father's tax returns, including for 2006, as well. Therefore, the plain meaning of "authority" as used in the statute applies and the court finds that Hoff was at all relevant times authorized by the Durable POA to act on behalf of Carlton in financial matters.

C. Hoff did not renounce the Durable POA.

The Magistrate Judge found that Hoff renounced the Durable POA in 2006. See R&R at 13 (Docket No. 67).[7] Therefore, he concluded that until Carlton and Hoff renewed the Durable POA in June 2009,

---

[7] In reaching this conclusion, the Magistrate Judge relied on what he characterized as the government's failure to address the significance of the 2006 dispute between Carlton and Hoff in its briefs. See R&R at 13 (Docket No. 67). However, the government did address the 2006 dispute between Carlton and Hoff. It pointed out that after the dispute "Hoff admitted that he did not talk to [Carlton] about withdrawing the POA and that it would hurt Hoff's feelings if the power of attorney was terminated." Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3, 11 (Docket No. 64).

Hoff was not authorized to act on behalf of Carlton in financial matters. The court finds this conclusion is incorrect.

As explained earlier, Pennsylvania law governs the validity of the Durable POA. Under Pennsylvania law, the burden of proving renunciation is on the party asserting it. See Shafer v. A.I.T.S. Inc., 428 A.2d 152, 155 (Pa. Super. 1981). An agent may renounce an agency relationship through any "absolute and unequivocal" means. Id. at 155; see also Bergner v. Bergner, 67 A. 999, 120 (Pa. 1907). "No fixed form or method is prescribed; but, to be effective to relieve the agent from the duties and obligations he had assumed, the renunciation must not only be positive and unequivocal, but it is essential that it be made known to the principal." Bergner, 67 A. at 120.

The court finds that Hoff did not renounce the Durable POA. In his deposition, Hoff admitted that he never discussed renouncing the Durable POA with Carlton. See Def.'s Decl., Ex. 4, at 26 (Docket No. 65-4). More specifically, he was asked, "Do you recall ever discussing the possible termination of the power of attorney directly with your father?" Id. Hoff responded, "I don't, but I could have said . . . I'm not doing anything with it now, it's really a non-issue, but it would hurt my feelings if it were terminated." Id. Although Hoff informed several people that he was no longer acting pursuant to the Durable POA, see Pl.'s Decl., Ex 5, at 2-3 (Docket No. 66-5), there is no evidence that any of them

27

communicated that fact to Carlton. Finally, in a letter from Hoff to Dr. Schneider on December 3, 2012, Hoff indicated that he "had [his] Dad's Power of Attorney. . . . But since his death it is no longer effective." Def.'s Decl., Ex. 12, at 2 (Docket No. 65-12) (emphasis added). This suggests that Hoff himself did not believe that he had renounced the Durable POA.

In a supplemental answer to interrogatories, Hoff contends that he told Carlton in 2006 that "he would no longer be exercising any rights granted to him under the [Durable] POA." See Def.'s Decl., Ex. 5, at 2 (Docket No. 66-5). However, if true, this would not constitute a renunciation. The purported statement only expresses an intent not to use the Durable POA, not a "positive and unequivocal" renunciation of it. Bergner, 67 A. at 120. Pennsylvania's durable power of attorney statute and the Durable POA in this case each provide that the power of attorney shall continue indefinitely, which indicates that merely not using the Durable would not constitute a renunciation. See 20 Pa. Const. Stat. §5604(b) (2017) ("Unless the power of attorney states a time of termination, it is valid notwithstanding the lapse of time since its execution."); Pl.'s Decl., Ex. 1, at 9 (Docket No. 66-1) ("This power shall not expire by reason of lapse of time.").

As explained earlier, Hoff testified in his deposition that he never discussed renouncing the Durable POA with Carlton. See Def.'s Decl., Ex. 4, at 26 (Docket No. 65-4). In this context,

Hoff's claim that he told Carlton that "he would no longer be exercising any rights granted to him" indicates that Hoff understood that his intention not to use the Durable POA did not preclude him from changing his mind and using it in the future. Def.'s Decl., Ex. 5, at 2 (Docket No. 66-5).

In view of the foregoing, the court finds that Hoff did not renounce the Durable POA.

D. Carlton did not revoke the Durable POA.

The Magistrate Judge did not make a finding concerning whether Carlton revoked the Durable POA.

Again, Pennsylvania law governs the validity of the Durable POA. "The general rule in Pennsylvania has long been that a principal has the right to revoke the authority granted to an attorney-in-fact under a power of attorney." In re St. Felix, 436 B.R. 786, 789 (Bankr. E.D. Pa. 2010). To be effective, revocation of a power of attorney requires "actual notice" from the principal to the agent. Prudential Ins. Co. of Am. v. Eisen, 2012 WL 876747, at *5 (E.D. Pa. March 15, 2012). "Actual notice" is that "given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." Id. at *6 (internal quotations omitted).

The Durable POA states that "written notification . . . actually received" by the agent is required to effect a revocation.

Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. 1, at 9 (Docket No. 61-1). Hoff admits he did not receive written notice that the Durable POA was revoked. See Def.'s Decl., Ex. 5, at 10 (Docket No. 65-5). He claims that three letters revoking the Durable POA were drafted, but states they were never sent. See id.

Hoff does not assert that he actually received any other notification of revocation. He only testified that his father's girlfriend wanted the Durable POA revoked. See id. In any event, even if Carlton wanted the Durable POA revoked, he did not take the steps necessary to effectuate a revocation.

### E. The Estate's Other Objections

The Magistrate Judge found that the Durable POA was used in the T. Rowe Price transactions in 2009 and 2012, and was "renew[ed]." See R&R at 14 (Docket No. 67). Based on this, he concluded that the 2009 and 2012 transactions demonstrated that Hoff was authorized to act on Carlton's behalf in "financial matters," pursuant to 26 U.S.C. 6511(h)(2)(B). See id. at 14.

The Estate argues that the 2009 and 2012 transactions were done pursuant to the TRP POA, not the Durable POA, and that "financial matters" in 26 U.S.C. §6511(h)(2)(B) is defined more broadly than the authority granted by TRP POA. See Pl.'s Obj. to R&R at 2, 14-15 (Docket No. 71).

It is, however, not necessary to decide these issues. Their resolution would not affect the outcome of this case. The court

finds that the Durable POA was validly executed, that it authorized Hoff to act on behalf of Carlton in financial matters, and that it was neither revoked nor renounced. Therefore, the statute of limitations was never tolled and expired long before the Estate's filing for a refund in April 2013. As the request for a refund was untimely, this court lacks jurisdiction.

VI.  ORDER

In view of the foregoing, it is hereby ORDERED that the defendant's motion to dismiss (Docket No. 57) is ALLOWED and this case is DISMISSED.

UNITED STATES DISTRICT JUDGE